## IN THE COURT OF COMMON PLEAS
## HOCKING COUNTY, OHIO

| | |
|---|---|
| SARAH E. ARLEDGE<br>267 ½ North Walnut Street<br>Logan, OH 43138 | CASE NO. 17CV0171<br><br>JUDGE: Wallace |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| GLENLAUREL, INC.<br>d/b/a Glenlaurel A Scottish Inn & Cottages<br>14940 Mount Olive Rd.<br>Rockbridge, Ohio 43149 | |
| **Serve Also:**<br>GLENLAUREL, INC.<br>c/o Nine Fifty Service Corporation,<br>Statutory Agent<br>37 West Broad Street, Suite 950<br>Columbus, OH 43215 | |
| Defendant. | |

HOCKING COUNTY COMMON PLEAS COURT
2017 SEP 27 AM 9:58
SHARON EDWARDS
CLERK OF COURT

Plaintiff, Sarah E. Arledge, by and through undersigned counsel, as her Complaint against

Defendant, states and avers the following:

### PARTIES & VENUE

1.  Arledge is a resident of the city of Logan, Hocking County, State of Ohio.

2.  Defendant Glenlaurel, Inc. d/b/a Glenlaurel A Scottish Inn & Cottages ("Glenlaurel") is an

    Ohio corporation with its principal place of business located in Hocking County at 14940

    Mount Olive Rd., Rockbridge, Ohio 43149.

3.  All material events alleged in this Complaint occurred in Hocking County, Ohio.

4.  Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code

    §2307.382(A)(1) and/or (A)(3).



5.  This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

6.  Arledge is a former employee of Glenlaurel.

7.  Arledge worked for Glenlaurel as a Server and Bartender, from on or about March 7, 2016, until Glenlaurel terminated Arledge's employment on or about October 25, 2016.

8.  As a Server/Bartender, Arledge's responsibilities included, but were not limited to: interacting with customers, taking orders and serving food and drinks; assessing Glenlaurel customers' needs and preferences and making recommendations; and attending to the tables in her assigned section and guaranteeing compliance to service and cleanliness standards.

9.  During her employment with Glenlaurel, Arledge was regularly required to share her tips with other employees who were not customarily-tipped employees, including cooks and dishwashers.

10. In the more than 7 months that Arledge worked for Glenlaurel, she had an exemplary employment record with no significant history of discipline.   Indeed, Rick Brown, Operations Manager, told Arledge on October 5, 2016, "you have been a stellar person & worker...you've gotten rave reviews on Trip Advisor, no one gets that...."   Further, Arledge's supervisor, Serena Craig, told Arledge, "Thank you for being dependable."

11. Despite Arledge's positive feedback and "rave reviews", Glenlaurel started conveniently finding and/or creating a basis to terminate Arledge after she reported sexual harassment in the workplace, as well as what reasonably appeared to be unlawful activities by Glenlaurel and its managers.



12. On several occasions while employed with Glenlaurel, Arledge was subjected to sexual harassment by other employees, including Jean-Michelle Matos, a chef at Glenlaurel.

13. On one occasion, Matos made an inappropriate hip thrusting motion towards Arledge. Arledge reported this conduct to Craig, but no action was taken against Matos.

14. In a separate incident, while Arledge and Matos were working together, Matos walked up behind Arledge and placed his hands on her hips in a way that made Arledge extremely uncomfortable. This time, Arledge reported Matos' inappropriate conduct to both Craig and Executive Chef Tyler Toles. Glenlaurel did nothing.

15. On October 10, 2016, Matos walked up to Arledge while they were working together, told her to turn around, and then lifted her skirt and put his hand under her skirt. Arledge yelled at Matos several times to get off her and then slapped his hand away when he refused to stop touching her. Other Glenlaurel employees witnessed this incident.

16. Arledge again reported Matos' behavior to both Craig and Toles. This time, in response to Arledge's complaint, Craig told Arledge, "When [Matos] works you cannot work unless a manager is there which is me or Tyler." Craig also told Arledge, "I believe you!! I know you well enough to know it was serious."

17. Regarding Matos, Craig also told Arledge, "I told [management] other situations with everyone when working with [Matos]," thus indicating that Glenlaurel was aware of Matos' harassing behavior, not just towards Arledge, but also towards other employees.

18. Despite Glenlaurel's knowledge that Matos was sexually harassing Arledge and other employees, Glenlaurel never disciplined or terminated Matos.

19. On or about October 14, 2016, Arledge made a report to Craig that "all the...money that was in the books is gone." In other words, Arledge reported a theft in the workplace.



20. Following Arledge's reports of harassment and theft in the workplace, Glenlaurel began cutting Arledge's hours and issuing her verbal and/or written warnings for certain conduct (e.g., carrying her mobile phone in her pocket during her shift), despite not issuing any discipline to other employees for engaging in the same conduct. Indeed, other similarly-situated employees who had not made reports of harassment and theft were treated more favorably than Arledge.

21. Further, despite Craig's assurance that Arledge would not have to work with Matos without either Craig or Toles on duty, Glenlaurel continued to schedule Arledge to work with Matos during shifts when neither Craig nor Toles worked.

22. When Arledge complained about having to still work with Matos without Craig or Toles present, Serena changed her story and said, "There was no rule that [Matos] and you wasn't (sic) allowed to work together."

23. Finally, on October 25, 2016, Glenlaurel terminated Arledge's employment.

24. Glenlaurel did not give a specific reason for Arledge's termination, though Craig told Arledge, "All I can say is it became an issue when 10 employees went to upper management about you."

25. Craig also told Arledge, "I backed everything you said up but you continued to stir shit up when it didn't need to be," clearly indicating that Arledge's reports and complaints of the harassment and theft led to her termination.

26. In only a few weeks – from October 5 to October 25, 2016 – Arledge went from being a "dependable", "stellar person & worker" to being terminated. The reason is because, after October 5, Arledge made several reports of sexual harassment and theft. In other words, she "continued to stir shit up".



27. Even while Craig was terminating Arledge's employment, she told Arledge, "No one said you was (sic) a bad employee. No one said you wasn't (sic) doing your job either." Thus, by Craig's own admission, Arledge was not terminated for her performance.

28. Glenlaurel has a policy and practice of fully investigating complaints of harassment, discrimination, and/or theft in the workplace.

29. Glenlaurel violated its policy and practice of fully investigating complaints of harassment, discrimination, and/or theft in the workplace regarding Arledge's complaints.

30. Glenlaurel's failure to follow their policy and practice of fully investigating complaints of harassment, discrimination, and/or theft in the workplace was an adverse action against Arledge.

31. Glenlaurel disregarded Arledge's complaints of harassment, discrimination, and/or theft in the workplace, and failed to take any action with respect to those complaints. The one action Glenlaurel did take – mandating that Arledge not work with Matos without Craig or Toles on duty – was withdrawn, as Glenlaurel continued to schedule Arledge to work with her harasser.

32. Rather than discipline Matos, investigate the theft, or take any action with regards to any of Arledge's complaints, Glenlaurel instead chose to terminate Arledge's employment.

33. On or about date, October 25, 2016, Arledge was actually terminated in retaliation for making complaints of sexual harassment and/or theft in the workplace.

34. Upon information and belief, Glenlaurel permitted similarly-situated employees who had not made complaints to retain their employment, despite engaging in behavior that was similar to or worse than Arledge's.

The Employee's Attorney.™



EXHIBIT A

35. Glenlaurel's purported reason for Arledge's termination is pretext for harassment and retaliation.

36. Glenlaurel did not proffer a legitimate non-discriminatory reason for terminating Arledge's employment.

37. As a result of being constantly harassed during her employment at Glenlaurel, and being wrongfully terminated from Glenlaurel, Arledge has suffered damages, including but not limited to, severe emotional distress, anxiety, and depression.

## COUNT I: SEXUAL HARASSMENT

38. Arledge restates each and every paragraph of this Complaint as though it were fully restated herein.

39. Arledge was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, inappropriate touching, and sexual advances.

40. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, inappropriate touching, and sexual advances.

41. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendant, Arledge repeatedly reported the sexual harassment to her supervisors both verbally and in writing.

42. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of O.R.C. §4112.02(A).

43. The sexual harassment of Arledge occurred while she was acting in the course and scope of her employment as Server and/or Bartender at Glenlaurel.



44. Arledge's supervisors had knowledge of the sexual harassment and failed to take any corrective or remedial action.

45. As a direct and proximate result of Defendant's conduct, Arledge has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEXUAL HARASSMENT AND DISCRIMINATION

46. Arledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

47. During her employment with Glenlaurel, Arledge was subjected to offensive and sexually harassing conduct by Matos.

48. Defendant knew or should have known of the harassing conduct against Arledge.

49. Defendant condoned, tolerated and ratified this harassing conduct.

50. This harassing conduct was severe and/or pervasive.

51. This harassing conduct was offensive to Arledge.

52. This harassing conduct interfered with Arledge's ability to perform her job duties.

53. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Arledge.

54. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Arledge.

55. As a direct and proximate result of Defendant's conduct, Arledge suffered and will continue to suffer damages.

The Employee's Attorney.™



**EXHIBIT A**

## COUNT III: NEGLIGENT RETENTION

56. Arledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

57. Matos sexually harassed Arledge during her employment.

58. Glenlaurel is the employer of Matos.

59. Glenlaurel knew Matos had engaged in sexual harassment against Arledge.

60. Glenlaurel's negligent retention of Matos is the proximate cause of Arledge's damages.

61. As a direct and proximate result of Defendant's conduct, Arledge has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV:  RETALIATORY DISCRIMINATION

62. Arledge restates each and every prior paragraph of this complaint, as if it were fully restated herein.

63. As a result of the Defendant's discriminatory and harassing conduct described above, Arledge complained about the sexual harassment she was experiencing.

64. Subsequent to Arledge's reporting of sexual harassment to her supervisors and/or managers, Arledge received unjustified write ups or corrective actions, reduced hours, and was ultimately terminated.

65. Defendant's actions were retaliatory in nature based on Arledge's opposition to the unlawful harassing and discriminatory conduct.

66. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"



EXHIBIT A

67. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Arledge, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

68. Arledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

69. On or about October 14, 2016, Arledge reported to Glenlaurel and Craig that money was missing and/or stolen from Glenlaurel.

70. Arledge reasonably believed that theft of money from Glenlaurel was a felony under Ohio law, and/or reasonably believed that the theft constituted a criminal act that threatened the public's health or safety.

71. Arledge verbally complained to Defendant regarding this conduct.

72. Arledge complained to Defendant in writing regarding this conduct.

73. Arledge gave Defendant an opportunity to investigate and cure the reported misconduct.

74. Defendant retaliated against Arledge by terminating her employment based on her complaints regarding this conduct.

75. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

76. Defendant's termination of Arledge jeopardizes these public policies.

77. Defendant's termination of Arledge was motivated by conduct related to these public policies.

78. Defendant had no overriding business justification for terminating Arledge.



79. As a direct and proximate result of Defendant's conduct, Arledge has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80. Arledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. Defendant intended to cause Arledge emotional distress, or knew that their acts or omissions would result in serious emotional distress to Arledge.

82. Defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

83. As a direct and proximate result of Defendant's acts and omissions as set forth above, Arledge has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

84. As a direct and proximate result of Defendant's conduct and the resulting emotional distress, Arledge has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: INVALID TIP-POOLING UNDER THE FAIR LABOR STANDARDS ACT

85. Arledge restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Under the Fair Labor Standards Act ("FLSA"), employers can pay employees receiving tips less than minimum wage. This arrangement is known as the "tip credit."



87. An employer can only take a tip credit toward the wages of employees who qualify as "tipped employees."

88. A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 in tips."

89. Arledge was a "tipped employee" while employed with Glenlaurel.

90. The FLSA explicitly permits tip pooling among employees who "customarily and regularly receive tips." Customarily-tipped employees interact with customers and directly influence a customer's willingness to leave a tip.

91. An employer is not a "tipped employee". Line cooks, kitchen managers, and dishwashers also are not "tipped employees". Thus, none of these individuals are eligible to share in a tip pool under the FLSA.

92. When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA.

93. Tipped employees may not be required to share their tips with employees who have not customarily and regularly participated in tip pooling arrangements.

94. During her employment with Glenlaurel, Arledge was regularly required to share her tips with other employees who were not customarily-tipped employees, including cooks and dishwashers.

95. Under the FLSA, this tip pool at Glenlaurel was invalid.

96. As a direct and proximate result of Defendant's conduct in requiring Arledge to participate in an invalid tip pool, Arledge has suffered and will continue to suffer damages, including economic damages.

The Employee's Attorney.™



## DEMAND FOR RELIEF

WHEREFORE, Arledge demands from Defendant the following:

(a) Issue a permanent injunction:

    (i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Arledge to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Arledge for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Arledge's claims as allowable under law;

The Employee's Attorney.™



(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Matthew G. Bruce (0083769)
**THE SPITZ LAW FIRM, LLC**
The WaterTower Plaza
25200 Chagrin Blvd, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com

*Attorney for Plaintiff Sarah E. Arledge*

## JURY DEMAND

Plaintiff Sarah E. Arledge demands a trial by jury by the maximum number of jurors permitted.

Matthew G. Bruce (0083769)
**THE SPITZ LAW FIRM, LLC**

The Employee's Attorney.™



Hocking County Common Pleas
1 East Main St, Logan, OH 43138

# Summons on Complaint

Case # 17CV0171

SARAH ARLEDGE
VS
GLENLAUREL INC

TO: GLENLAUREL INC
C/O NINE FIFTY SERVICE CORPORATION
STATUTORY AGENT
37 WEST BROAD ST, SUITE 950
COLUMBUS, OH 43215

You have been named a defendant in a complaint (a copy of which is attached) by the above named plaintiff. You are hereby required to complete the following:

1. Within **28 days** after service you must serve (deliver or mail) a copy of your answer or motion for extension of time upon the plaintiff's attorney or upon the plaintiff if there is no attorney on record
2. You must also file your original answer, motion or other pleadings with the Clerk of Court's office within **3 days** of serving the plaintiff/plaintiff's attorney

If you fail to respond, judgment by default maybe taken against you for the relief demanded in the complaint

Attorney for Plaintiff:
MATTHEW G BRUCE
25200 CHAGRIN BLVD
BEACHWOOD OH 44122

Sharon Edwards, Clerk of Courts

By:
Deputy Clerk
1 East Main St
Logan, OH 43138
9/28/2017

**EXHIBIT A**